IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLARK K. GARRIS,** : | |
| Plaintiff : | |
| : | |
| VS. : | 3:CV-98-2047 |
| : | (VANASKIE, C.J.) |
| **JO ANNE B. BARNHART** : | |
| **Commissioner of Social Security,** : | |
| Defendant : | |

## **MEMORANDUM**

Plaintiff Clark Garris filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Mr. Garris, who is currently imprisoned, claims that he is unable to engage in gainful employment because of a combination of impairments, including low intelligence, functional illiteracy, hearing impairment, migraine headaches, and psychological problems.

Magistrate Judge Mannion issued a report and recommendation proposing that Mr. Garris's appeal of the Commissioner's decision be denied.  Mr. Garris has filed "exceptions" to the report and recommendation, arguing that: (1) the opinions of his treating physicians were not accorded proper significance; (2) his testimony was not given sufficient consideration; (3) the vocational expert was not informed of all of his impairments before issuing an opinion; and (4) his evasiveness to questioning was misconstrued as indicating that he was not suffering

from a mental illness.

Having carefully considered the objections raised to Magistrate Judge Mannion's report and recommendation de novo, I agree that the Commissioner's decision is supported by substantial evidence in the record.[1]  Accordingly, the report and recommendation will be adopted and the Commissioner's decision denying Plaintiff's application for SSI will be affirmed.

## I.  STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to ascertaining whether the decision is supported by "substantial evidence."  42 U.S.C. § 405(g); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mason, 944 F.3d at 1064 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  So long as the Commissioner's findings of fact are supported by substantial evidence, the Court is not free to decide the facts of the case for itself–even if it might decide those facts differently from the Commissioner.  See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

## II.  DISCUSSION

An Administrative Law Judge ("ALJ") acting on behalf of the Commissioner determined that Mr. Garris was not disabled under the Social Security Act because he failed to

---

[1] Magistrate Judge Mannion's report and recommendation includes a comprehensive review of the evidentiary record.  (Dkt. Entry 19.)  There is no need to detail the evidence once again here.

demonstrate an inability to engage in any substantial gainful activity for twelve months as required by the Act.  (R. at 14-23.)  Mr. Garris raises four objections to the ALJ's decision.[2]  (Dkt. Entry 20.)

Mr. Garris first argues that the ALJ failed to give special significance to the opinions of his treating physicians and erroneously relied on psychological evaluations done while he was in prison.  It is true that an ALJ considering a claim for disability benefits "must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all."  Mason v. Shalala, 994 F.2d 1058, 1067(3d Cir. 1993).  This is because a treating physician is in a special position "to provide a detailed, longitudinal picture of [the claimant's] impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 416.927(d)(2); see also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (stating that a treating physician's report should be given greater weight "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

---

[2] Mr. Garris presented the same four objections to Magistrate Judge Mannion.  (See Dkt. Entry 17.)  As noted earlier, Magistrate Judge Mannion recommended that Mr. Garris's objections be denied.  (Dkt. Entry 19.)  The fact that Mr. Garris's objections are addressed again in this decision does not indicate any disagreement with Magistrate Judge Mannion's careful and complete analysis.

In this case, Mr. Garris asserts that the ALJ failed to accord proper significance to the opinions of Dr. Saeed-Uz Zafar Kahn and Dr. Judy Raabe.  Dr. Kahn evaluated Mr. Garris during a four-day hospitalization in July 1999.  Mr. Garris was brought to the hospital after he expressed thoughts of suicide based on his fear of being arrested for molesting a child.  Dr. Kahn diagnosed Mr. Garris as suffering from adjustment disorder with mixed emotions.[3]  (R. at 244.)  He concluded that Mr. Garris had a Global Assessment of Functioning score ranging from forty to fifty.[4]  (Id.)

---

[3]  According to the online encyclopedia, Wikipedia:

> [A]djustment disorder refers to a psychological disturbance that develops in response to a stressor. Adjustment disorders are caused by specific sources of stress, such as severe personal crisis (divorce, death of loved one, recent abuse) or major unexpected negative events (tornado or fire destroys a person's home). The usual symptoms mimic depression, anxiety, or sleep disorder; however the disturbance disorder is short-term and can usually be treated with counseling or mild short-term medication. If the problem persists more than six months after removal of the stressor, the person may have a more permanent problem, such as a genuine mood or sleep disorder.

WIKIPEDIA, at http://en.wikipedia.org/wiki/Adjustment_disorder (last visited May 4, 2006). Presumably, the source of stress in Mr. Garris's case was the pending criminal charges for molesting a child.

[4]  According to the online encyclopedia, Wikipedia, "[t]he Global Assessment of Functioning, or GAF scale, is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults. WIKIPEDIA, at http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning (last visited May 4, 2006).  A score between forty-one and fifty means, "[s]erious symptoms OR any serious impairment in social, occupational, or school functioning." Id.  A score between thirty-one and forty means,

Dr. Khan ordered that Mr. Garris complete a Minnesota Multiphasic Personality Inventory-2 (MMPI-2) personality test to determine whether he was faking his symptoms. (R. at 245.) Evaluating the MMPI-2 test, Dr. Raabe determined that the results "suggest that there is legitimate psychopathology involved, specifically many psychotic symptoms." (R. at 246.)

While in prison, Mr. Garris met with a psychological services specialist in 2001 and a licensed psychology manager in 2002. The psychological services specialist conducted a clinical interview and a personality and psychopathology test. (R. at 256-58.) In the specialist's opinion, Mr. Garris did not require immediate psychiatric intervention and was no longer a serious suicide threat. (R. at 257.) The licensed psychology manager also conducted a clinical interview and noted that Mr. Garris carried a stability score of "A", indicating "minimal psychological impairment." (R. at 260-61.) In the manager's assessment, Mr. Garris's "mental status review was within normal limits." (R. at 260.)

Initially, it should be noted that application of the treating physicians doctrine in this case is suspect. Neither Dr. Khan nor Dr. Raabe observed Mr. Garris over a prolonged period of time to develop a "longitudinal picture" of his impairments. See 20 C.F.R. § 404.1527(d)(2)(i) (stating that a physician's opinion will be given more weight when the physician has seen the claimant "a number of times and long enough to have obtained a longitudinal picture" of the

---

"[s]ome impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Id.

5

claimant's impairment). Dr. Khan's contact with Mr. Garris appears to have been limited to a few meetings during Mr. Garris's brief hospitalization. (See R. 245.) Moreover, his observations were made while Mr. Garris was agitated by pending criminal charges. It is unclear what Dr. Khan's assessment of Mr. Garris's mental state would be if Mr. Garris was not in such an excited state. Regardless, it is clear that Dr. Khan's opinion does not warrant greater weight as it was not formed over a prolonged period of time with numerous consultations with Mr. Garris. See 20 C.F.R. § 416.927(d)(2).

As for Dr. Raabe, it does not appear that she ever even met with Mr. Garris. (See R. at 246 (relying on an MMPI-2 test to make her evaluation).) At the very least, Dr. Raabe did not treat Mr. Garris. Consequently, Dr. Raabe's opinion does not warrant heightened weight under the treating physician doctrine.

The ALJ nonetheless gave proper consideration to the opinions of Dr. Khan and Dr. Raabe. In his decision to deny Mr. Garris's application for SSI, the ALJ noted Dr. Khan's diagnosis of adjustment disorder as well as test results indicating Mr. Garris's impaired mental faculty. (R. at 20-21.) The ALJ simply found this evidence insufficient to show that Mr. Garris was severely impaired for a sufficiently long period of time from a mental disorder. It was significant in the ALJ's assessment that Mr. Garris did not require medication or mental health treatment after his release from the hospital. (R. at 20.) Indeed, it appears that Mr. Garris's psychological problems were limited to his arrest for child molestation.

The ALJ found further support for his decision from the psychological evaluations conducted while Mr. Garris was in prison, indicating that Mr. Garris did not suffer from a severe psychological impairment.  In addition, the ALJ found Mr. Garris to be coherent during his social security hearing.  (R. at 20-21.)  Considering all the evidence in the record, this Court finds that the ALJ had substantial evidence to reach his decision that Mr. Garris was not severely impaired from a mental disorder.

Mr. Garris's second argument is that the ALJ did not properly consider his own statements regarding the severity of his impairment, while according too much significance to his ability to function within prison's structured environment.  This argument is also without merit.

In making his determination, the ALJ considered <u>all</u> relevant information regarding Mr. Garris's impairments, including his background, his daily activities in prison,[5] his testimony before the ALJ, and medical evidence.  (R. at 18-19.)  Weighing all the evidence, the ALJ determined that Mr. Garris was not entitled to SSI under the Social Security Act because he was capable of performing "simple, repetitive work; involving no more than incidental interaction with the public; not requiring work in loud or noisy environments, at any exertional level."  (R. 20-21.)

The ALJ simply did not find Mr. Garris's statements regarding his mental impairments

---

[5] Mr. Garris was able to take care of his personal needs, work as a janitor for ninety minutes a day, and attend classes while in prison.  (R. 18.)

and his functional limitations to be credible.  (R. at 21.)  The ALJ explained:

> At the hearing . . . Mr. Garris appeared alert.  He manifested no outward problems with concentration or memory, and was able to adequately recall important events, dates, names, etc.  The claimant communicated well, and responded to questions appropriately and with reasonable intelligence.  There was nothing to indicate that he could not meet the mental demands of simple, repetitive work.

(R. at 21.)

It is within the ALJ's authority to make such credibility determinations.  See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983) (stating that an Administrative Law Judge "is empowered to evaluate the credibility of witnesses," but must "state that he found a witness not credible before wholly disregarding his testimony"); Matullo v. Bowen, 926 F.2d 240, 247 (3d Cir. 1990).  Based on the evidentiary record and the ALJ's credibility analysis, this Court finds that the ALJ's decision to doubt Mr. Garris's assertions regarding the severity of his symptoms and his functional limitations is supported by substantial evidence in the record.

Mr. Garris's third argument is that the ALJ failed to present all of his impairments to the vocational expert.  Specifically, Mr. Garris argues that the ALJ should have notified the vocational expert about his mental health limitations and migraine headaches.

Mr. Garris seeks support for his position from Burns v. Barnhart, which stated that "[a] hypothetical question posed to a vocational expert must reflect all of a claimant's impairments." 312 F.3d 113, 123 (3d Cir. 2002) (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d

Cir.1987) (alteration in original). This does not mean, however, that the ALJ must include all <u>alleged</u> impairments in a hypothetical question, but only "the limitations which the <u>ALJ found</u> were suffered by the claimant." <u>Plummer v. Apfel</u>, 186 F.3d 422, 431 (3d Cir. 1999) (emphasis added); <u>see</u> <u>also</u> <u>Podedworny v. Harris</u>, 745 F.2d 210, 218 (3d Cir. 1984).

The ALJ determined that Mr. Garris could perform "simple, repetitive work; involving no more than incidental interaction with the public; not requiring work in loud or noisy environments, at any exertional level." (R. at 20-21.) The ALJ's hypothetical question to the vocational expert reflected all of these limitations. (R. at 87-88.) Mr. Garris contends that the ALJ should have also informed the vocational expert about his mental health limitations. The ALJ, however, did not find that Mr. Garris was severely impaired by any mental disorder.[6] Inclusion of Mr. Garris's alleged mental disorder, therefore, was not required.

Mr. Garris also contends that the ALJ should have notified the vocational expert about his migraine headaches. Contrary to Mr. Garris's assertion, the ALJ did inform the vocational expert about his headaches. (R. at 91.) The vocational expert opined that an employer would tolerate Mr. Garris missing two to three days a month due to his migraine headaches.[7] (Id.) Mr. Garris's challenge, therefore, lacks merit.

---

[6] As discussed earlier, this determination is supported by substantial evidence in the record.

[7] Mr. Garris testified that his migraine headaches occur about once every two months and last for a day. (R. 73-74.)

Mr. Garris's final argument is that the ALJ misconstrued his evasiveness to questioning from prison psychologists as indicating he was of "reasonable intelligence," (R. at 21), rather than suffering from a mental disorder.  The ALJ determined that Mr. Garris's evasiveness to questioning was a product of dishonesty, not mental illness.  The ALJ's determination was based largely on Mr. Garris's testimony during the social security hearing, noting that Mr. Garris "appeared alert," "manifested no outward problems with concentration or memory," "communicated well," and "responded to questions appropriately and with reasonable intelligence." (R. at 21.)  The ALJ found further support for his conclusion from the opinion of prison psychologists that Mr. Garris was not suffering from a severe mental disorder.  As discussed earlier, this conclusion is supported by substantial evidence in the record.

### III. CONCLUSION

For the reasons set forth above, the Report and Recommendation of Magistrate Judge Mannion will be adopted and the Commissioner's decision denying Plaintiff's application for disability benefits will be affirmed.  An appropriate Order follows.

                                            **s/ Thomas I. Vanaskie**
                                            Thomas I. Vanaskie
                                            United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARK K. GARRIS,** | : | |
| Plaintiff | : | |
| | : | |
| VS. | : | 3:CV-98-2047 |
| | : | (VANASKIE, C.J.) |
| **JO ANNE B. BARNHART** | : | |
| **Commissioner of Social Security,** | : | |
| Defendant | : | |

## ORDER

**NOW, THIS 29th DAY OF SEPTEMBER, 2006**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. The Report and Recommendation of Magistrate Judge Mannion (Dkt. Entry 20) is **ADOPTED**.

2. The decision of the Commissioner of Social Security is **AFFIRMED.**

3. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and against Plaintiff.

4. The Clerk of Court is further directed to mark this matter **CLOSED.**

                                            **s/ Thomas I. Vanaskie**
                                            Thomas I. Vanaskie
                                            United States District Judge